```
15
```

SHERI L. CARELLO, Bar No. 173498
Trustee in Bankruptcy
PO Box 22527
Sacramento, CA 95822-0527
(916) 444-8149

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In Re:

MICHAEL BISCH

Debtors.

Case No. 14-28027-A-7
Motion Control No. SLC-1

DATE: July 5, 2016
TIME: 10:00 a.m.
COURTROOM: 28

**EXHIBITS IN SUPPORT OF TRUSTEE'S MOTION FOR
TURNOVER OF ESTATE PROPERTY**

| | |
|---|---|
| Exhibit "A" -Membership Certificate from Trackside Center, LLC | 2 |
| Exhibit "B" -Schedule B - Personal Property filed August 6, 2014 | 3 |
| Exhibit "C" - Letter dated January 11, 2016 from Trustee to Attorney Hill | 7 |
| Exhibit "D" - Letter dated June 30, 2015 from Attorney Schaps and letter dated June 10, 2015 from Attorney White | 8 |

Dated: 5/31/16

SHERI L. CARELLO, Chapter 7 Trustee

1



Exhibit "A"

-2-

# MEMBERSHIP CERTIFICATE

1,000,000 UNITS
CLASS A UNITS

This Certifies that **Michael Bisch** is a member of the above named Limited Liability Company and is entitled to the full benefits and privileges of such membership, subject to the duties and obligations, as more fully set forth in the Limited Liability Company Operating Agreement.

In Witness Whereof, the Limited Liability Company has caused this Certificate to be executed by its duly authorized members this **third** day of **September** **2014**, and it's Limited Liability Company seal to be hereunto affixed.

© 1999 CORPEX BANKNOTE CO., BAY SHORE N.Y.

B6B (Official Form 6B) (12/07)

In re **Michael Bisch** , Case No. _____
　　　　　　　　　Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.
If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | | Cash | - | 100.00 |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | First Northern Bank checking acct. no. xxxxxxxx2943 | - | 1,682.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Couch | - | 50.00 |
| | | Chair | - | 20.00 |
| | | Shelving | - | 50.00 |
| | | Dining table (40) & chairs (40) | - | 80.00 |
| | | Kitchen utensils, pots & pans | - | 40.00 |
| | | Beds | - | 100.00 |
| | | Garage hand/power tools | - | 200.00 |
| | | BBQ equipment | - | 20.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | 20 books | - | 20.00 |
| 6. Wearing apparel. | | Clothing | - | 350.00 |
| 7. Furs and jewelry. | X | | | |

Sub-Total >　　2,712.00
(Total of this page)

　3　continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com　　　　　　　　　　　　　　　　Best Case Bankruptcy

Exhibit "B"-3-

B6B (Official Form 6B) (12/07) - Cont.

In re **Michael Bisch** ,      Case No. _____
                      Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 8. Firearms and sports, photographic, and other hobby equipment. | | **Bicycles** | - | 120.00 |
| | | **Camping & fishing equipment** | - | 50.00 |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Term life insurance (face value $500,000; no cash/surrender value)** | - | 0.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **BV64, Inc. (debtor owns 60% of the outstanding shares; corp. liabilities are greater than its assets)** | - | 0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |

                                                          Sub-Total >     170.00
                                             (Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                            Best Case Bankruptcy

Filed 05/31/16    Case 14-28027    Case 14-28027 Filed 08/06/14    Doc 1    Doc 31

B6B (Official Form 6B) (12/07) - Cont.

In re **Michael Bisch** ,
                                                    Debtor

Case No. _____

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |

Sub-Total >      0.00
(Total of this page)

Sheet  2  of  3   continuation sheets attached
to the Schedule of Personal Property

- 5 -

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re　**Michael Bisch**　　　　　　　　　　　　　　　　　　　　　　Case No. _____
　　　　　　　　　　　　　　　　Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  |  |
|---|---|
| Sub-Total > (Total of this page) | 0.00 |
| Total > | 2,882.00 |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Best Case Bankruptcy

*SHERI L. CARELLO*
*Chapter 7 Trustee*
*Eastern District of California*
*PO Box 22527*
*Sacramento, CA 95822-0527*
*(916)444-8149*

January 11, 2016

Dennis B. Hill
D.B. Hill, A Professional Corporation
354 F Street
Lincoln, CA 95648

Re: Chapter 7 Case No. 14-28037-A-7
    Michael Bisch,

Dear Mr. Hill:

In response to your letter dated October 13, 2015, the $8,000.00 was not earned after the case was filed .

The $8,000.00 was part of the original agreement that Mr. Bisch entered into regarding the purchase of the property for Trackside Center, LLC., which he was personally a member. The $8,000.00 was to be paid to the Class A members upon the closing. The agreement to purchase the property started back in April, 2014, well before Mr. Bisch filed for bankruptcy. The $8,000.00 was part of the original agreement and therefore, is property of the bankruptcy estate that was due and owing on the date of filing to Mr. Bisch personally.

Demand is hereby made for the turnover of the $8,000.00 to the estate. If the funds are not received within ten (10) days of this letter, I will file a motion with the court seeking turnover of the funds. Please make the cashier's check payable to the "Estate of Bisch".

If you have any questions regarding the above, please feel free to contact me.

                              Yours truly,

                              SHERI L. CARELLO
                              Chapter 7 Trustee

slh

Exhibit "C" - 7



**Michael A. Schaps**
430 D Street, Davis, CA 95616
(530) 238-5111
mschaps@michaelschaps.com
www.michaelschaps.com

June 30, 2015

*Via email to aw@rwhitesf.com and Certified U.S. Mail,*
*Return Receipt Requested*

Mr. Robert E. White
Law Offices of Robert E. White
177 Post St., Suite 550
San Francisco, CA 94108

       **Re: Trackside Center, LLC and Michael Bisch**

Dear Mr. White:

As you know, this office represents Trackside Center, LLC ("Trackside") in its dispute with your client, Michael Bisch. This letter responds to your letter of June 10, 2015, in which, on behalf of Michael Bisch and his company, BV64, Inc. ("BV64"), you assert various claims against Trackside and demand $110,000 in settlement of those claims.

Before I address your client's claims, I think it is worth recalling how the parties reached this point. In April 2014, using a deposit contributed by Kemble Pope and others, BV64 entered into an agreement to purchase the property commonly known as 901-919 3rd Street, Davis, California (the "Property") for $1.4 million. Bisch and Pope's purpose was to redevelop the Property into an ambitious, multi-story commercial and residential center. Bisch and Pope brought in Steven Greenfield as an investor and partner, and the three partners began recruiting investors to fund the purchase. Dozens of investors agreed to put up a total of $1.6 million, contingent upon the execution of an LLC operating agreement.

An operating agreement for "Trackside," prepared by Downey Brand, was circulated to the investors on August 5, 2015. As relevant here, it provides that Bisch and Pope would be the LLC's two Class A members, and that the other investors would be Class B members; that the Class A members would be entitled to appoint two managers, who were designated to be Pope and BV64; that the Class B members would be entitled to appoint one manager, who was designated to be Greenfield; and that the three managers – Pope, Greenfield and BV64 – would constitute the Board, which would have authority to run Trackside by majority vote. It further provides that the Class A members (Pope and Bisch) each would own two percent of the company and each would be entitled to an $8,000 payment upon closing; that the Class A managers (Pope and BV64) each would be entitled to a $50,000 payment upon entitlement

1

*Exhibit "D"*    - 8 -

and each would be entitled to another $50,000 payment upon the satisfaction of certain occupancy conditions.

In addition to the foregoing terms, the Operating Agreement provides that "[t]he Managers shall perform their duties as a Manager in good faith, in a manner he reasonably believes to be in the best interests of [Trackside], and with due care." (Operating Agreement ("OA") ¶ 7.3.) It empowers the Board to remove managers "for cause," which is defined as "an act or failure to act by a Manager constituting a breach of his or her fiduciary duties, with such breach involving intentional misconduct, fraud, a knowing violation of law, or a breach of this Agreement by such Manager." (*Id.*) The board is empowered to expel members, as relevant here, for "an act or acts constituting a felony, or other act involving dishonesty, disloyalty or fraud against [Trackside] in a material respect," or for a violation of the California Revised Uniform Limited Liability Company Act. (*Id.* ¶ 5.5.)

By the time the Operating Agreement was circulated in early August 2015, Bisch, Pope and Greenfield had discussed the likelihood that, once formed, Trackside would need to seek bank financing in addition to its members' investments. This financing, they discussed and understood, would be necessary to support Trackside's operations as it planned and sought approval for the ambitious mixed-use project to be built on the Property. Bisch, Pope and Greenfield discussed and understood that they themselves likely would have to execute personal guarantees in order for Trackside to obtain such financing, and all three agreed to do so.

The Operating Agreement was executed in September 2014, and the members subscribed and made their investments. Trackside substituted into the escrow as buyer of the Property, and escrow closed in October 2014. Bisch, as the buyer's broker, received a 2% commission on the transaction, or $28,000.

Immediately thereafter, Trackside, acting primarily through Pope, who had agreed to serve as project manager, began planning and working toward entitlement. Trackside also hired BV64, doing business as Davis Commercial Properties, to manage the existing building on the Property.

In early May 2015, Trackside was in the process of applying to a major regional bank for the necessary line of credit. As expected, the bank was willing to extend credit to Trackside only if Bisch, Pope and Greenfield demonstrated good credit and executed personal guarantees. The bank had no issue with Pope and Greenfield's credit, but it informed Bisch that it would be impossible for the company to obtain commercially reasonable financing as long as BV64 was a manager.

When informed of the bank's position, Bisch for the first time disclosed to Pope and Greenfield that he had filed for bankruptcy on August 6, 2014 – the day after he, Pope and Greenfield had circulated the Operating Agreement to Trackside's prospective members.

Upon Bisch's disclosure, Pope and Greenfield confirmed with the bank that it would not do business with Trackside if BV64 were a manager. Bisch then admitted that he had always known BV64 might have to resign as a manager due to his bankruptcy. Bisch expressed no remorse or acceptable justification for failing to disclose his bankruptcy earlier. Instead, he suggested "solving" the problem by replacing BV64 as manager with one of the investors, an acquaintance of his, who lacks business experience and by making Bisch a syndicator who would receive all of the compensation BV64 otherwise might have received as a manager. He further suggested telling Trackside's membership that the management change was for "efficiency."

Pope and Greenfield were shocked and appalled – first and foremost by Bisch's failure to disclose his bankruptcy, which Bisch knew would jeopardize Trackside's ability to get crucial financing, but also by his proposal to "solve" the problem by installing an unfit manager and continuing to mislead and deceive Trackside's members, now with Pope and Greenfield's knowledge. Pope and Greenfield immediately rejected Bisch's proposal and set about terminating his involvement in Trackside.

On May 18, 2015, at a properly noticed meeting, the Board voted 2-1 to expel and forever dissociate Bisch as a member of Trackside, and then Pope, as the sole remaining Class A member, removed BV64 as a manager. Next, the Board decided to exercise Trackside's right under the Operating Agreement to repurchase Bisch's entire membership interest at the applicable discounted purchase price. (See OA Exhibit C, ¶ 5(b).) Bisch was formally notified of the foregoing actions and decisions by letter dated May 20, 2015.

In June 2015, as soon as alternate arrangements could be made, Trackside provided a 30-day termination notice (per contract) to end its property-management contract with BV64.

Since Bisch and BV64 were ousted, the two sides have exchanged various letters, which, with the exception of your most-recent letter, I will not summarize here. In your most-recent letter, dated June 10, 2015, you assert, without explanation, that the Board's ouster of Bisch and BV64 was "unauthorized and unlawful." You assert that, due to "rapidly increasing property values in downtown Davis since purchase of the [P]roperty[,] Mr. Bisch's 2% interest in [Trackside] is currently worth $75,000-100,000." You assert that "BV64, Inc. stood to realize additional compensation upon build out not to mention the hundreds of thousands of dollars in leasing commissions and property management fees that it would have earned over the next five years" – money you imply BV64 is legally entitled to recover from Trackside. Finally, you offer Trackside a choice: it can either pay Bisch and BV64 $110,000, allow Bisch to buy out Pope and Greenfield's interests in Trackside for $110,000 and $60,000, respectively, or be sued.[1] I respond to each of these points in turn.

---

[1] For completeness, a copy of your June 10, 2015, letter is enclosed herewith.

First, contrary to your assertion, the Board's ouster of Bisch and BV64 was authorized, legal and appropriate. Bisch and BV64 withheld damaging, material information from the Board. They did so intentionally, for their own benefit, and to Trackside's significant detriment. Their actions constitute a classic breach of fiduciary duty that, under the Operating Agreement as well as California law, fully supports the Board's decisions. (See 5 Witkin, Summary 10th (2005) Torts, § 794.) The same goes for Bisch's proposed "solution" to the problem he and BV64 created. Bisch suggested placing an unqualified person on the Board and lying to Trackside's members about the reason for doing so. This is another clear, inarguable breach of fiduciary duty.

Because Bisch and BV64 were properly and legally ousted, BV64 has no claim to any additional compensation it might have received had they not been ousted. In any event, your claim that BV64 would have realized hundreds of thousands in management fees and other payments is entirely speculative and legally unenforceable. (See 1 Witkin, Summary 10th (2005) Contracts, § 879.)

This leaves Bisch's membership interest in Trackside. Your claim that its market value is $75,000 to $100,000 is unsupported and inconsistent with Bisch's own recent estimates, which were about half that. The value of his interest, however, can and must be determined as provided in the Operating Agreement – that is, by retaining an independent appraiser. (OA Ex. C, ¶ 5(c).) Once that value is determined, 10% would be paid "at closing, with the remaining balance paid together with interest at the Prime Rate as of that time, in level quarterly payments over a ten (10) year period." (*Id.* ¶ 6(a).) Assuming Bisch's interest is worth $40,000 – which was his own written estimate as recently as May 5, 2015 – this would mean $4,000 at closing and roughly $1,000 per quarter for ten years thereafter.

Of course, Trackside also has offsetting claims against Bisch and BV64 based on their breaches of fiduciary duty. By failing to disclose Bisch's bankruptcy, Bisch and BV64 delayed Trackside's financing, which required Trackside to take costly interim steps. It also diverted Trackside's management from pressing business, which negatively affected its progress and public relations. And it caused Trackside to incur other significant costs, including substantial attorney's fees. These damages, as well as punitive damages, may far exceed the value of Bisch's membership interest, and they must be accounted for.

There is another issue that bears directly upon compensation for Bisch's membership interest in Trackside. Bisch filed a Chapter 7 bankruptcy petition on August 6, 2014, and he received a discharge of $387,966 in debts on March 3, 2015. (U.S. Bankruptcy Court for the Eastern District of California case No. 14-28027.) In his petition, Bisch stated that his personal property totaled only $2,882 and that his only "[s]tock and interests in incorporated and unincorporated businesses" was 60% ownership of BV64, which he claimed was worth nothing because its liabilities exceed its assets. He claimed a monthly income of $6,692, monthly expenses of $6,424, and stated he did not expect his income to increase over the coming year. I see no evidence that Bisch disclosed his membership interest in Trackside or

its predecessor partnership, or the $8,000 payment he received from Trackside on October 14, 2014, or the $28,000 commission he received upon closing, to the bankruptcy court or trustee. The trustee's report, issued on January 27, 2015, states that "there is no property available for distribution from the estate over and above that exempted by law."

Bisch's representations to the Bankruptcy Court, made under oath, appear to be inconsistent with the assertions in your letter of June 10, and they raise a number of questions. If, as it appears, Bisch did not disclose his interest in Trackside or the predecessor partnership, why not? How can Bisch's personal property, including interests in all businesses, have been worth only $2,882 if, as you assert, his membership interest in Trackside is worth $75,000 to $100,000? How could Bisch have stated on August 6, 2014, that he did not expect his income to increase in the next year when he knew he shortly stood to collect a $28,000 broker's commission and $8,000 guaranteed payment? If BV64 was insolvent, why did Bisch make it, rather than himself, a manager of Trackside, and how has it continued to do business as Davis Commercial Properties? How can Bisch, who recently claimed to have only $2,882 to his name, and whose credit is ruined by a recent bankruptcy, now offer to buy Pope and Greenfield's interests for $170,000?

Whatever the answers to these questions may be, the fact is that any asset Bisch improperly failed to disclose to the bankruptcy trustee remains, to this day, part of the bankruptcy estate. (11 U.S.C. § 554(d).) If Bisch's membership interest in Trackside or the predecessor partnership falls into this category, then Trackside would be powerless to buy back that interest by paying money to Bisch; it could only buy back that interest by paying money to the bankruptcy trustee. Similarly, if Bisch improperly failed to disclose the $28,000 broker's commission or the additional $8,000 Trackside paid him upon closing, then Bisch must pay that money back to Trackside or over to the bankruptcy trustee.

Because Trackside cannot proceed without first determining whether Bisch or the bankruptcy estate owns the membership interest at issue, I am sending copies of this letter to the United States Bankruptcy Trustee for the Eastern District of California and the trustee appointed in Bisch's bankruptcy case. Trackside will not consider making any payment to Bisch until the interested authorities inform it that Bisch owns the membership interest.

But even if Bisch were confirmed as the owner of the membership interest, an issue of judicial estoppel would remain if he failed timely to disclose that interest to the bankruptcy court. "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." (*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 783 (9th Cir. 2001).) Simply put, if Bisch failed timely to disclose his interest in Trackside or the predecessor partnership in bankruptcy, he would be unable to maintain an action against Trackside based on that interest. Moreover, as stated above, Trackside's own claims against Bisch and BV64 must be taken into account in any resolution of this matter.

Moving on, your June 10 letter threatens litigation if Trackside does not meet Bisch's demands. Please review paragraph 13 of the Operating Agreement, which provides that "all controversies or claims between the parties" must be mediated and, if still unresolved, submitted to binding arbitration through AAA. Please note, too, that "[i]f court proceedings to stay litigation or compel arbitration are necessary, the party that unsuccessfully opposes such proceedings shall pay all associated costs, expenses and attorneys' fees that are reasonabl[y] incurred by the other party."

There is one additional contention in your June 10 letter that requires a response. You assert that Justin Lowenthal, outside counsel for Trackside, would be "acting in bad faith and in violation of the Rules of Professional Conduct due to a conflict of interest that should be obvious" if he were advising Trackside with respect to its dispute with Bisch and BV64. In fact, however, no such conflict of interest is apparent, let alone obvious. Please set forth the full factual basis for your very serious claim.

I believe the foregoing fully sets forth Trackside's position with respect to Bisch and BV64's claims. In sum, Trackside will pay Bisch for his membership interest pursuant to the Operating Agreement if Bisch still owns that interest despite his bankruptcy. Trackside rejects Bisch and BV64's other claims.

Notwithstanding the foregoing, Trackside remains open to paying modest and appropriate compensation for a mutual confidentiality, non-disparagement, non-interference and release agreement executed by BV64, Bisch, Trackside, Pope and Greenfield.

I look forward to your response and, I hope, to guidance from the relevant bankruptcy authorities.

Very truly yours,

*/s/ Michael A. Schaps*

Michael A. Schaps

(Enclosure)

Cc: U.S. Trustee
Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Sheri L. Carello, Trustee
PO Box 22527
Sacramento, CA 95822-0527

# LAW OFFICES OF ROBERT E. WHITE

Robert E. White
Susan C. Rushakoff

177 Post Street, Suite 550
San Francisco, California 94108

Paralegal Assistant &
Office Administrator:
Abigail Wizansky

Telephone: (415) 788-6151
Facsimile: (415) 788-6154

June 10, 2015

**VIA E-MAIL TO kemblekpope@gmail.com and Steve@cecwest.com**
**AND BY CERTIFIED MAIL-RETURN RECEIPT REQUESTED**

Mr. Kemble K. Pope
Mr. Steven Greenfield
Trackside Center, LLC
2940 Spafford Street, Suite 202
Davis, CA 95618

         Re: <u>Trackside Center, LLC and Michael Bisch</u>

Dear Mr. Pope and Mr. Greenfield:

       I am writing in response to your letter dated June 2, 2015, and accompanying proposed Memorandum of Understanding, etc. ("MOU"). Preliminarily, I suspect it will not surprise you to learn that Mr. Bisch disagrees, categorically, with your portrayal of the events leading up to his unauthorized and unlawful ouster (and that of BV64, Inc.) from involvement in Trackside. It should also not surprise you when I state that if we cannot come to a mutually agreeable resolution of this situation, the only recourse is litigation that we are quite confident no side to this dispute, nor the Class B members, desires. However, you are kidding yourselves if you think that it is possible to achieve an "amicable" resolution.

       It is also evident that the documents that you have generated to date have been written by, or with the aid of an attorney. Please be advised that if your shadow counsel is Mr. Lowenthal he, too, is acting in bad faith and in violation of the Rules of Professional Conduct due to a conflict of interest that should be obvious to all of you.

       You are also putting the cart before the horse in presenting us with a draft MOU until we have worked out monetary terms. If we can do that, then it should be possible to craft a properly tailored confidentiality and separation agreement, one conforming to California law (which the draft MOU most emphatically is not). The draft your shadow counsel has prepared is both overreaching and unlawful. For example, Mr. Bisch had existing relationships with and brought into the LLC many of the Class B members. Under no circumstances would he agree to any restriction on his working with them in connection with future real estate opportunities.

       But first things first -- let's discuss the monetary terms. Mr. Bisch will accept $110,000 in full payment of his interests and BV64, Inc.'s claims arising from their unlawful ouster from Trackside. As you are aware, largely through the efforts of Mr. Bisch, the bulk the entitlement work has been completed and, as you have indicated to the Class B investors, there is a high level of confidence that this milestone will be reached. Absent its wrongful removal as a manager, BV 64, Inc. stood to realize $50,000 for those efforts. You

-14-

**LAW OFFICES OF ROBERT E. WHITE**

Messrs. Pope & Greenfield
June 10, 2015
Page 2

are also aware of the rapidly increasing property values in downtown Davis since purchase of the property; Mr. Bisch's 2% interest in the LLC is currently worth $75,000-100,000. Of course, BV64, Inc. stood to realize additional compensation upon build out not to mention the hundreds of thousands of dollars in leasing commissions and property management fees that it would have earned over the next five years. In short, in light of the circumstances, Mr. Bisch's willingness to accept $110,000 is more than reasonable. This is not a back and forth negotiation – this is Mr. Bisch's final number. We can address allocation issues between Mr. Bisch and BV 64 Inc. once we have clarity that we can actually achieve a settlement here.

One aspect of your inaccurate portrayal of what occurred is your ignoring who actually has the skills and contacts to make this venture successful. If anyone is breaching fiduciary duty in connection with a buyout, it's the people who have pushed out of the deal the person who can make it succeed. That is one of the reasons Mr. Bisch proposed to buy you out. He remains willing to do so. To move this matter along, Mr. Bisch proposes to buy Mr. Greenfield out for $60,000 and Mr. Pope for $110,000. These numbers are also firm. If we can agree on the numbers in principle, we can then work out appropriate documents to effectuate such a buyout. Further, there is no need for you to expend LLC funds for the engagement of a business valuation expert to determine a discounted value to be paid over time; should the parties not come to agreement concerning a buyout this will get sorted out in litigation in due course and the Court, following trial, and aided by expert testimony, will determine the present value of the stream of income that your actions have cost Mr. Bisch and BV 64, Inc.

You have until Friday, June 19, 2015, 5:00 p.m., to respond. And that deadline, too, is firm.

Very truly yours,

*Robert E. White*

ROBERT E. WHITE